IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**YEMAL CALDERÓN AMÉZQUITA,**

**Plaintiff,**

**v.**

**VICTOR RIVERA-CRUZ, et al.,**

**Defendants.**

**CIVIL NO. 17-2197 (GAG)**

## OPINION AND ORDER

Yemal Calderón-Amezquita ("Plaintiff") brings this action against Defendants for injuries and damages suffered as a result of Mr. Carmelo Calderón-Marrero's wrongful death. Plaintiff, the decedent's son and sole heir, sues under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, seeking to hold Defendants liable for his father's alleged injuries and wrongful death pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, §§ 5141-5142. (Docket Nos. 1, 5, 68).

Before the Court are Defendants Dr. Andrés Ávila-González and Dr. Ángel Torres-Sánchez's Motions to Dismiss (Docket Nos. 502 and 505); Defendants Dr. Victor Rivera-Cruz, Grupo de Emergencias VRC, CSP ("GEVRC") and Dr. Carlos Hernández-Román's Motions for Partial Summary Judgment. (Docket Nos. 503; 506; 511). Each co-defendant also includes their respective insurance companies: (1) Puerto Rico Medical Defense Insurance Company (PRMDIC) as to Defendants Torres-Sánchez, GEVRC, Dr. Hernández-Román and (2) Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico/Hospitalaria (SIMED) as to Ávila-González. (Docket Nos. 502, 505, 506, 511).

All of the pending dispositive motions -filed after the conclusion of discovery- contend, among other arguments, that Plaintiff's claims are time-barred. Namely, Defendants posit two

**Civil No. 17-2197 (GAG)**

theories: (1) that the original complaint was filed after the one-year statute of limitations had elapsed, or (2) that Plaintiff's extrajudicial actions were insufficient and, therefore, failed to interrupt the statute of limitations. Id. The Court first addresses the timelines arguments as to each Defendant.

Also before the Court is Plaintiff's Motion for Partial Summary Judgment against Defendant Doctors' Center Hospital (hereinafter, "Doctors' Hospital") (Docket No. 509) arguing that the hospital has already admitted, in a parallel Commonwealth proceeding, that the doctors and hospital personnel's negligent acts and omissions caused Calderón-Marrero's death. Alternatively, Plaintiff posits that according to the record evidence it is an uncontested material fact claim that Doctors' Hospital incurred in medical malpractice that lead to the alleged wrongful death of his father. Thus, he moves the Court to enter partial summary judgment as to that element. Id.

After careful review of the parties' submissions and pertinent law, the Court **GRANTS** Defendants Dr. Andrés Ávila-González and Dr. Ángel Torres-Sánchez's Motions to Dismiss at Docket Nos. 502 and 505, **GRANTS** Defendants Grupo de Emergencias VRC, CSP ("GEVRC") and Dr. Carlos Hernández-Román's Motions for Partial Summary Judgment at Docket Nos. 506 and 511, **DENIES** Defendants Dr. Victor Rivera-Cruz's Motion for Partial Summary Judgment at Docket No. 503 and **DENIES** Plaintiff Calderón-Amézquita's Motion for Partial Summary Judgment against Defendant Doctors' Hospital at Docket No. 509.

## I.     Relevant Factual and Procedural Background[1]

On January 23, 2016, at around 10:00 p.m., Mr. Calderón-Marrero was transferred from Toa Alta Diagnostic and Treatment Center to Doctors' Hospital Emergency Room after complaining

---

[1] These facts *only* relate to those Defendants that argued that the present action is time-barred. Plaintiff admitted most facts contained in this section "as long as the proffer accurately reflects the content of the documentation cited in support." (Docket Nos. 517 at 2; 522 at 2; 529 ¶ 1). Thus, Defendants' facts are deemed as uncontested under Local Rule 56, L. Cv. R. 56(b). See also Natal Pérez v. Oriental Bank & Tr., 291 F.Supp.3d 215, 219 (D.P.R. 2018).

Civil No. 17-2197 (GAG)

1  about abdominal pain. (Docket Nos. 502 ¶ 2; 503 at 2; 505 ¶ 2; 507 ¶ 3; 512 ¶ 7). On January 24,

2  2016, he was admitted as a patient at the hospital. (Docket No. 507 ¶ 4).

3      On January 25, 2016, Plaintiff travelled to Puerto Rico to visit his father at Doctors' Hospital.

4  (Docket Nos. 502 ¶ 9; 503 at 2; 505 ¶ 18; 507 ¶¶ 9, 12-13; 512 ¶ 34). On that same day, but before

5  Plaintiff arrived, Calderón-Marrero underwent surgery and was placed in the Intensive Care Unit

6  (ICU). (Docket Nos. 503 at 3; 512 ¶ 40). During this visit to the hospital, Calderón-Amézquita met

7  and spoke with several doctors and hospital medical staff regarding his father's condition and

8  treatment. (Docket Nos. 505 ¶¶ 18-20, 23-24; 507 ¶¶ 14, 17; 512 ¶¶ 41-43). He learned from these

9  conversations that Mr. Calderón-Marrero had suffered "peritonitis due to a perforated ulcer."

10 (Docket Nos. 503 at 3; 507 ¶ 17; 512 ¶ 46).

11     After spending several weeks in the ICU, on February 21, 2016, Mr. Calderón-Marrero died.

12 (Docket Nos. 503 at 4; 505 ¶ 27; 507 ¶ 5; 512 ¶ 52). Plaintiff returned to Puerto Rico around February

13 22 and 23, 2016, and visited Doctors' Hospital where he again met and talked with doctors and

14 medical staff and requested Calderón-Marrero's official medical records. (Docket Nos. 503 at 4; 505

15 ¶ 28; 512 ¶ 55, 57). Plaintiff received his father's official medical record between February and

16 March 2016. (Docket No. 505 ¶ 29; 512 ¶ 57).

17     A. Plaintiff's Claims

18         a. Original Complaint

19     On September 13, 2017, Plaintiff filed the instant suit (Docket No. 1). On September 15,

20 2017, Plaintiff amended his initial Complaint after the Clerk's Office sent a defective filing notice

21 (Docket No. 2; 5). Plaintiff's amended complaint included as Defendants: (1) Dr. Rivera-Cruz; (2)

22 Dr. Ávila-González; (3) Dr. Torres-Sánchez and (4) Doctors' Hospital, among others.[2]

23

24 [2] Plaintiff also included Defendants' spouses, conjugal legal partnerships and possible unknown insurance
companies, doctors and other corporations, who may be liable for this father's death. (Docket No. 5). This section

Civil No. 17-2197 (GAG)

Plaintiff Calderón-Amézquita, the decedent's son, is a licensed physician specialized in emergency medicine. He worked, at the time of the events, at Palmetto General Hospital in Hialeah, Florida. (Docket Nos. 502 ¶ 8; 503 ¶ 3; 507 ¶ 9; 512 ¶ 3).

Defendant Dr. Ávila-González is a licensed physician with medical privileges to work at Doctors' Hospital Emergency Room. (Docket Nos. 502; 515-2 at 25-26). Defendant Dr. Ángel Torres-Sánchez is licensed physician with medical privileges to work at Doctors' Hospital Emergency Room. (Docket No. 505 ¶ 8). Both Dr. Ávila-González and Dr. Torres-Sánchez were on duty at the time of the events and treated the decedent as their patient. (Docket No. 505 ¶ 9; Docket No. 515). Defendant Dr. Rivera-Cruz is licensed physician and was, at the time of the events, the Medical Director of Doctors' Hospital Emergency Room. (Docket No. 503 at 4).

> *b. Second Amended Complaint*

On April 30, 2018, Plaintiff amended his complaint for a second time (Docket No. 68) adding, among others, co-defendants: (1) Dr. Hernández-Román and GEVRC.[3]

Defendant GEVRC is a corporation that, at the time of the events, had exclusive rights to oversee the administration and operation of Doctors' Hospital Emergency Room. (Docket No. 507 ¶ 6). Defendant Dr. Rivera-Cruz is the sole owner and president of GEVRC. (Docket No. 503 at 4). Finally, Defendant Dr. Hernández-Román was, at the time of the events, under professional services contract with GEVRC working as an emergency room physician at Doctors' Hospital (Docket No. 512 ¶ 19). On January 24, 2016, Dr. Hernández-Román took over for Dr. Ávila-González when his work shift ended at the emergency room. Id. ¶ 26.

---

of the Opinion and Order does not include detailed facts as to Defendant Doctors' Hospital because it did not raise the time-barred defense. (Docket No. 509).

[3] Two insurance companies, PRMDIC and SIMED, were also added at this time. (Docket No. 68).

In the Amended Complaint, Plaintiff specifically puts forward four causes of actions all under Article 1802 and/or 1803 of the Civil Code of Puerto Rico: (1) medical malpractice pursuant to Article 1802 and 1803; (2) hospital and commercial liability pursuant to Article 1802; (3) negligence in the "performance of supervisory" duties pursuant to Article 1802 and 1803, and (4) "director liability" pursuant to Article 1802. (Docket No. 68 ¶¶ 196-241).

The Court notes that in his Motion for Leave to File a second amended complaint, (Docket No. 67), Plaintiff requested "leave to substitute fictitious parties, add parties and amend the Complaint" and that said request arouse out of "evidence unavailable and unknown when the case commenced." (Docket No. 67 ¶¶ 2-3). Plaintiff attached to this amended complaint two exhibits (Abdominal CT and X-Ray Report). (Docket Nos. 68-1; 68-2). None of these exhibits make reference to Defendants GEVRC or Dr. Hernández-Román.

B. Plaintiff's Extrajudicial Actions

Plaintiff alleged in the initial complaint that on February 18, 2017 he sent "extrajudicial claims to all co-defendants in connection with the damages claimed in this suit." (Docket Nos. 1 ¶ 134; 5 ¶ 134; 68 ¶ 193). He further argues that "[a]lthough many co-defendants replied to the extrajudicial communication, a settlement offer has yet to be received." (Docket Nos. 1 ¶ 135; 5 ¶ 135; 68 ¶ 194). Among his amended allegations, Plaintiff adds that:

> [Before] February 21, 2017, [he] requested from the Hospital the names of all physicians and employees who would be liable for Mr. Calderon's death, but no information was provided. It was not until April 2018, through the discovery process in parallel state court litigation that some information about the identity and responsibility of the named co-defendants was provided by the hospital.

(Docket No. 68 ¶ 195). During the initial stages of the federal case, the record did not contain evidence in support of Plaintiff's alleged extrajudicial actions.[4]

---

[4] The Court takes judicial notice, pursuant to FED. R. EVID. 201, that, on August 14, 2017 Plaintiff's brother and sister, Mr. Omar Calderón-Amézquita and Ms. Mónica Calderón-Amézquita, filed a similar damages' cause of

Civil No. 17-2197 (GAG)

C. Discovery Stage

On December 20, 2017, the instant case was referred to Magistrate Judge Camille Velez-Rivé for initial settlement and scheduling conference. (Docket No. 27). The initial discovery and dispositive motions deadlines were set for January 31, 2019 and February 28, 2019, respectively. (Docket No 45). On October 19, 2018, Magistrate Judge Velez-Rivé extended discovery deadlines until October 15, 2019. (Docket No. 180). By the end of October 2019 most discovery was completed. (Docket No. 486). The deadline for summary judgment motions was set for November 29, 2019 (Docket No. 424) and later extended until December 6, 2019 (Docket No. 497).

The record shows that discovery in this case was particularly contentious between the parties. (See e.g. Docket Nos. 255; 306; 332; 334; 338; 348; 352; 415; 452; 486). In that regard, the Court commends Magistrate Judge Velez-Rivé for her zealous handling and resolution of these issues. The Court underscores specific events that arose during discovery, that are relevant to the issue pending before the Court.

For instance, on several occasions, Plaintiff moved to compel Defendant Doctors' Hospital to produce or translate certain documents. Magistrate Judge Velez-Rivé gave the hospital ample opportunities to comply. (See e.g. Docket Nos. 126; 145; 270; 283; 290; 300; 306; 320; 331; 332; 342; 461; 479; 486). According to Plaintiff, the first set of interrogatories was served upon Doctors' Hospital on April 2, 2018. (Docket No. 207). This interrogatory petitioned information regarding certain hospitals' protocols and procedures, the name of healthcare professionals working at the Radiology Department and Emergency Room, the name of any corporate entity administrating the Hospital's Emergency Room and several transcripts of the doctors' hand-written notes. (Docket Nos.

---

action (Civil No. DDP-2017-0468 (703)) at the Commonwealth Bayamón Court of First Instance ("Commonwealth proceedings"). This case is still pending in local court.

Civil No. 17-2197 (GAG)

270; 551-1).[5] After multiple extensions of time, many related to personal matters involving Doctors' Hospital counsel, on April 24, 2019 Magistrate Judge Velez-Rivé ruled that "the answers to discovery requests by the Hospital [had] been exhaustively litigated [and] [a]t this stage, the Court is satisfied that the Hospital has complied [with] all pending discovery requests." (Docket No. 348). She thus expressly ordered Plaintiff to refrain from filling motions as to this issue. Id. Nonetheless, Plaintiff "obviated this directive" and subsequently claimed that several documents were still missing. (Docket No. 350; 352). She denied Plaintiff's request. (Docket No. 352).

Similarly, on May 30, 2019, Plaintiff moved for leave to amend his Complaint for the third time arguing that he learned, through a deposition, about possible negligence involving the hospital's understaffing situation. (Docket No. 363). Plaintiff did not include any exhibit attached to this motion. Id. Magistrate Judge Vélez-Rivé denied Plaintiff's request. (Docket No. 370). Plaintiff moved the undersigning to reconsider Magistrate Judge Vélez-Rivé's ruling. (Docket No. 380). The Court ordered Defendants to respond and explain if the proposed amendment would have any impact on the ongoing discovery. (Docket No 383). Defendants opposed Plaintiff's leave to amend arguing that the proposed amendment was made in bad-faith, considering that discovery was almost completed with more than fourteen depositions taken. (Docket No. 400 at 100-11). Defendants posited that allowing new allegations would cause an undue burden Id. On July 9, 2019, the Court denied Plaintiff's request to amend the complaint, affirming the Magistrate Judge's ruling. (Docket No. 403).

Upon the conclusion of discovery, on December 6, 2019, the parties submitted their dispositive motions.

---

[5] The interrogatory was first submitted to the record on February 2, 2020 when Plaintiff filed his sur-reply to Defendant GEVRC's Partial Motion for Summary Judgment. (Docket No. 551-1).

Civil No. 17-2197 (GAG)

### D. Plaintiff's Statement of Additional Facts

#### a. *Alleged Extrajudicial Actions*

The Court must highlight a letter submitted as an exhibit to Plaintiff's opposition to Defendant GEVRC's Partial Motion for Summary Judgment (Docket No. 517-2). Plaintiff Calderón-Amézquita submitted for the record a letter sent to Doctors' Hospital on February 13, 2017. Id. The letter was addressed to: (1) Dr. Carlos Blanco, Resident Agent; (2) Dr. Edgar Martorell, Medical Services Department Director; (3) Dr. Victor Rivera, Emergency Room Director, and (4) Hospital Doctors' Center-Bayamón. Id.

The letter specifically states that: "This letter constitutes an extrajudicial claim against the hospital and all the healthcare professionals who provided subpar medical services to Mr. Calderón-Marrero in January and February 2016. Their negligent act and omissions caused Mr. Calderón-Marrero's death." Id. at 1. Moreover, in said letter, Plaintiff requested the hospital to provide "a list containing the complete names of all the healthcare professionals whose hand-written notes appear on Mr. Calderón-Marrero's medical records, as well as their license numbers and positions within the hospital" and "a list of all legal entities who employees, hired or retained all healthcare professionals who provided medical services to Mr. Calderon-Marrero at the Hospital in January and February 2016." (Docket No. 517-2 at 2). The letter has Doctors' Hospital "received" stamp marked on that same date. Id. at 1-2.

The authenticity of the letter has not been challenged. However, all Defendants allege that they did not receive said letter or one similar to it. (Docket Nos. 502 ¶ 13; 503 at 16-17; 505 at 5; 506 ¶ 11; 511 ¶ 6). Whether the letter was in fact received, or if it effectively interrupted the statute of limitations, constitutes a mixed question of law and fact and the Court shall address it after discussing the applicable law as to this case.

### b. *Plaintiff's Unsworn Statement Under Penalty of Perjury*

Plaintiff Calderón-Amézquita also includes, in his oppositions to both GEVRC and Dr. Hernández-Román's Motion for Partial Summary Judgment, an unsworn statement under penalty of perjury signed by him to give factual context to the letter sent to Doctors' Hospital and to include a new additional fact: that he first learned about the existence of these Defendants, GEVRC and Dr. Hernández-Román, on April 25, 2018 through documents obtained at the parallel Commonwealth court proceedings. (Docket Nos. 517 ¶ 8; 529 ¶ 19). The "affidavit" is dated December 9, 2019; the day before Plaintiff's filed his opposition to GEVRC and after the discovery stage concluded. (Docket No. 517-1). Similar to the alleged extrajudicial letter, the Court will evaluate if this affidavit complies with the standard set out in FED. R. CIV. P. 56(c)(4).

## I.     Standard of Review

### A.   Motion to Dismiss

When assessing a motion to dismiss under to Rule 12(b)(6), "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). The element that "triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material." 5C Charles Alan Wright & Arthur R. Miller, Conversion of a Rule 12(b)(6) Motion into a Summary Judgment Motion, Federal Practice and Procedure § 1366 (3d ed. 2008); see also González Berrios v. Kmart of Puerto Rico, Inc., Civil No. 16-2130 (DRD), 2017 WL 5195217 at *3 (D.P.R. 2017). If the Court treats a Rule 12(b) motion as a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Nonetheless, "a district court does not have to give express notice when the opposing party has received movant's motion and materials and has had a reasonable opportunity to respond to

Civil No. 17-2197 (GAG)

them." Nutrasweet Co. v. Venrod Corp., 982 F. Supp. 98, 99-100 (D.P.R. 1997). See also Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998); C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 43 (1st Cir. 1998); Rodríguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). "The absence of formal notice will be excused when it is harmless or when the parties were otherwise appraised of the conversion or the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." Wright & Miller, supra, at § 1366. More importantly, and particularly true in the present case:

> When the window for filing either a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings has shut and *substantial discovery has taken place*, the plausibility standard normally becomes a relic of a bygone time. From that point forward, a party seeking to end a civil action short of trial ordinarily must meet a different standard: the standard applicable to a motion for summary judgment under Rule 56.

Rios-Campbell v. U.S. Dep't of Commerce, 927 F.3d 21, 24 (1st Cir. 2019) (emphasis added).

As detailed in the factual and procedural background section, extensive discovery was conducted in the instant action and both parties have provided sufficient materials in addition to their legal arguments, including multiple depositions, expert reports and interrogatories. For this reason, the parties should have become aware that the two (2) pending motions to dismiss would be considered as motions for summary judgment. The Court shall thus consider the documents submitted by the parties in order to make its ruling; consequently, Defendants Dr. Ávila-González and Dr. Torres-Sánchez's Motions to Dismiss, FED. R. CIV. P. 12(b)(6), at Docket Nos. 502 and 505, are hereby *sua sponte* converted into motions for summary judgment.

B. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

Civil No. 17-2197 (GAG)

of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). A "genuine"
issue is one that could be resolved in favor of either party, and a "material" fact is one that has the
potential of affecting the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248-50 (1986); see also Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The
moving party bears the initial burden of demonstrating the lack of evidence to support the nonmoving
party's case. Celotex, 477 U.S. at 325. The movant party also "must aver an absence of evidence to
support the nonmoving party's case." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st
Cir. 1994). If not, then the burden "shifts to the nonmovant to establish the existence of at least one
fact issue which is both genuine and material." Id. The non-movant party may establish that a fact
is genuinely in dispute by citing evidence in the record or showing that either the materials cited by
the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party
cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court
finds that some genuine factual issue remains, the resolution of which could affect the outcome of
the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the
light most favorable to the non-moving party and give that party the benefit of all reasonable
inferences. Id. at 255. At this stage, the court does not make credibility determinations or weigh the
evidence. Id. Moreover, "[o]n issues where the nonmovant *bears the ultimate burden of proof*, [he]
must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d
816, 822 (1st Cir.1991) (emphasis added); see also Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st
Cir. 2008). Finally, summary judgment may not be appropriate if the parties "merely rest upon
conclusory allegations, improbable inferences, and unsupported speculation." Rossy v. Roche Prod.,

Civil No. 17-2197 (GAG)

Inc., 880 F.2d 621, 624 (1st Cir. 1989); see also Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018).

## II.   Legal Analysis and Discussion

The first issue before the Court is whether Plaintiff's claims are timely and if these were properly tolled. Defendants Dr. Ávila-González and Dr. Torres-Sánchez argue that Plaintiff's claims as to them are time-barred because when this action was filed -September 13, 2017- the statute of limitations had elapsed and *twenty-one months* had passed since the time of the events. (Docket No. 502 and 505). According to Defendants, Plaintiff had knowledge of the alleged facts since, and between, January 25, 2016 -Plaintiff's first visit to the hospital- and February 21, 2016 -Mr. Calderón Marrero's death. (Docket Nos. 502 at 12; 505 7-9). Moreover, Dr. Ávila-González and Dr. Torres-Sánchez posit that they did not receive a letter from Plaintiff that could interrupt the statute of limitations before the commencement of this action on September 13, 2017. (Docket No. 502 at 4; 12 and Docket No. 505 at 10). Plaintiff opposes arguing that: (1) Defendants incorrectly rely on Spanish language case-law without advancing the required English translations; (2) disregard well-pleaded allegations and a prior ruling issued by this Court as to the time-barred defense, and (3) the Court, in any case, should allow him to amend the complaint to address Defendants Dr. Ávila-González and Dr. Torres-Sánchez's arguments. (Docket No. 516 at 5-7).

Similarly, Defendant GERVC contends that the present action is time-barred because it was not added as party until April 30, 2018 (Plaintiff's second Amended Complaint) and it never received a letter or communication from Plaintiff tolling the action. (Docket No. 506 ¶ 3-6). More so, GERVC posits that even if Plaintiff sought to substitute a fictitiously named corporation in the initial complaint, "Corporation Z," the statute of limitations for this action elapsed by September 13, 2017 when it was originally filed. (Docket No. 507 at 7-8). As a whole, Defendant GERVC concludes

Civil No. 17-2197 (GAG)

that Plaintiff should have been more proactive and diligent while inquiring the identity of his alleged tortfeasors. Id. at 8.

In opposition, Plaintiff Calderón-Amézquita argues that: (1) under the cognitive theory of damages, the statute of limitations against GERVC began to accrue on April 25, 2018 -when he first learned about its existence through the parallel Commonwealth court litigation and (2), in the alternative, the statutory period related to the claims against GERVC were tolled on February 13, 2017, pursuant to the equitable tolling doctrine, by way of Plaintiff's letter sent to the hospital because it failed to provide the required information about said corporation. (Docket No. 517 at 5-6). GERVC replied and Plaintiff Calderón-Amézquita filed a sur-reply thereafter.[6] (Docket Nos. 549; 551).

On the other hand, Defendant Dr. Rivera-Cruz principally avers that Plaintiff cannot prove medical malpractice claims against him. (Docket No. 503 at 16-17). As an alternative argument for dismissal, he puts forward that the claims, as Doctors' Hospital Emergency Room director and physician, are time-barred because the initial complaint was untimely filed on September 13, 2017 and Plaintiff had knowledge of his identity before such date. Id. Plaintiff Calderón-Amézquita filed an opposition arguing that the claims against Dr. Rivera-Cruz as a physician and emergency room director were properly tolled through the extrajudicial claim sent on February 13, 2017. (Docket No. 522 at 23-26). Plaintiff reiterated that, as to director and owner of GERVC, the claims were either filed within the statutory limitations period, under the cognitive theory of damages, because he learned of Dr. Rivera-Cruz's role on April 25, 2018 through the parallel Commonwealth court proceedings or, alternatively, equitably tolled on February 13, 2017-via the alleged extrajudicial

---

[6] Plaintiff filed a motion to strike Defendant's reply for untimeliness. (Docket No. 550). Throughout this entire case, the Court has allowed ample time to all parties for filing oppositions and replies, hence, Plaintiff's motion to strike at Docket No. 550 it hereby **DENIED**.

letter- because the hospital allegedly kept GERVC's existence hidden. (Docket No. 522 at 23-26). As an additional argument, Plaintiff holds that there exists perfect solidarity between Dr. Rivera-Cruz and Doctors' Hospital, thus, the extrajudicial letter sent to the hospital also tolled the statute of limitations against him. Id. at 26.

Dr. Rivera-Cruz replied alleging that Plaintiff does not satisfy the Commonwealth case-law requirement for tolling a damages' cause of action; notably, that Defendant has not provided evidence of notice and receipt of the alleged extrajudicial letter. (Docent No 541 at 14). Plaintiff filed a sur-reply insisting that his claims against Dr. Rivera-Cruz must be analyzed through his different professional roles at the hospital and that the extrajudicial letter sent to him complies with all statutory and case-law requirements. (Docket No. 546 at 7-14).

Finally, Defendant Dr. Hernández-Román, in a similar manner to Dr. Rivera-Cruz, alternatively argues that the claims against him are time-barred because the original complaint was untimely filed on September 13, 2017 and he was added as a party, via amended complaint, on April 30, 2018. (Docket Nos. 511 ¶ 6; 513 ¶¶ 40-45). In his opposition, Plaintiff Calderón-Amézquita posits that, under the cognitive theory of damages, the statute of limitations against Dr. Hernández-Román began to run on April 25, 2018 when he first learned about him through the parallel Commonwealth court proceedings. (Docket No. 529 at 20-22). Dr. Hernández-Román replied and Plaintiff Calderón-Amézquita filed a sur-reply thereafter. (Docket Nos. 560; 563).

A.  Statute of Limitations

In this diversity case, the Commonwealth of Puerto Rico's substantive law applies. See Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009). Article 1868 of the Puerto Rico Civil Code establishes a one-year statute of limitations for tort actions, including medical malpractice cases, commencing "from the time the aggrieved person had knowledge" of the injury. P.R. LAWS ANN. tit. 31, § 5298. The statute of limitations, or "extinctive prescription," under

Civil No. 17-2197 (GAG)

Commonwealth law is considered a substantive and not a procedural matter. Alejandro-Ortiz v. PREPA, 756 F.3d 23, 27 (1st Cir. 2014).

As discussed on multiple occasions by this District and the First Circuit: "The principal purpose of a statute of limitations is to secure the economic and social stability of bilateral relations by encouraging swift claims for performance of contractual or legal obligations and thus procure the tranquility of the debtor against the eternal threat of a civil action against him." Kery v. Am. Airlines Inc., 931 F. Supp. 947, 951 (D.P.R. 1995). Thus, "its objective is threefold: it attempts to punish the negligent prosecution of actions; it seeks to promote stability in juridical relations, and it pursues the practical concern of avoiding the institution of actions long after memories have faded." Rodríguez Narvaez v. Nazario, 895 F.2d 38, 43 (1st Cir. 1990) (internal citations and footnotes omitted).

The one-year prescription begins to run when plaintiff has "actual [or true] knowledge of both the injury and of the identity of the person who caused it" or "is deemed to be on notice of [his] cause of action if [he] is aware of certain facts that, with the exercise of due diligence, should lead [him] to acquire actual knowledge of [his] cause of action." Alejandro-Ortiz, 756 F.3d at 27 (emphasis added); see also Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998). For accrual purposes, "the injured person must have both notice of [his] injury and knowledge of the likely identity of the tortfeasor." Caraballo v. Hosp. Pavia Hato Rey Inc., 377 F. Supp. 3d 99, 116 (D.P.R. 2019) (citing Tokyo Marine,142 F.3d at 3). When plaintiff brings an action *more than a year* after the injury took place, he "bears the burden of proving that [he] lacked the requisite 'knowledge' at the relevant times." Alejandro-Ortiz, 756 F.3d at 27 (emphasis added); see also Espada v. Lugo, 312 F.3d 1, 4 (1st Cir. 2002); Rivera Encarnación v. Estado Libre Asociado de P.R.,113 P.R. Dec. 383, 13 P.R. Offic. Trans. 498, 501-02 (P.R. 1982).

Civil No. 17-2197 (GAG)

Whether plaintiff has "exercised reasonable diligence" as to knowledge of injury and identity of tortfeasor "is usually a jury question . . . so long as the outcome is within the range where reasonable men and women can differ." Villarini-Garcia v. Hosp. Del Maestro, Inc., 8 F.3d 81, 86 (1st Cir. 1993) (citations omitted). In this regard, "[d]ue diligence does not mean waiting for answers to fall from the sky-it requires reasonable, active efforts to seek answers and clarify doubts. Plaintiffs are expected to 'promptly assert their rights' when faced with facts that create a 'reasonable basis for concern' about negligence." Estate of Alicano Ayala v. Philip Morris, Inc., 263 F. Supp. 2d 311, 317 (D.P.R. 2003) (citations and internal quotation marks omitted).

Specifically, when assessing the elements of actual and deemed knowledge, the First Circuit has stated that, under Commonwealth law, the inquiry as to proving actual knowledge and deemed knowledge "concern alternative ways in which a defendant may establish that a claim is barred because it is filed too late." Rodriguez-Suris v. Montesinos, 123 F.3d 10, 14 (1st Cir. 1997). The test for considering these alternatives require that:

> If the defendant succeeds in showing that plaintiff has not satisfied, or cannot satisfy, plaintiff's burden of proving lack of true knowledge (that is, lack of full awareness of all that need be known to preclude tolling), final judgment for the defendant on the ground of late filing is appropriate.
>
> If, instead, the finder of fact finds (or the court, by determining that the evidence of record is so one-sided as to compel a finding) that the plaintiff was aware of enough facts to constitute notice and to satisfy the deemed knowledge rule of the Puerto Rico law of limitation of tort actions, final judgment for the defendant on the ground of late filing is appropriate *unless* plaintiff has proffered evidence sufficient to support a finding that representations and assurances by the defendant persuaded plaintiff to rely reasonably and delay institution of a civil action.

Id. at 14-15 (emphasis in original). The also-known "cognitive" theory of damages entails that "if the plaintiff's lack of awareness is due to its own negligence or carelessness, then the prescriptive period will begin to run on the date the alleged tort occurred." Barretto Peat, Inc. v. Luis Ayala Colón

Civil No. 17-2197 (GAG)

1  Sucrs., Inc., 896 F.2d 656, 658 (1st Cir. 1990); see also Rodríguez-Suris, 123 F.3d 10, 15 (1st Cir.

2  1997).

3       B.  Commonwealth of Puerto Rico's Tolling Requirement

4       Albeit the "cognitive" theory of damages, the Commonwealth's statute of limitations for a

5  tort action may be tolled under appropriate circumstances. P.R. LAWS ANN. tit., 31 § 5303

6  ("Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim

7  of the creditor, and by any act of acknowledgment of the debt by the debtor."). See González-Pérez

8  v. Hosp. Interamericano de Medicina Avanzada, 355 F.3d 1, 2 (1st Cir. 2004). "Although

9  prescription is an affirmative defense, once it has been raised, the burden of proving that prescription

10  has been interrupted shifts to the plaintiff." Tokyo Marine, 142 F.3d at 4; see also Kery, 931 F. Supp.

11  at 951 ("The burden of proving tolling, either through direct or circumstantial evidence, falls upon

12  the party asserting it") (citations omitted). The effect of successfully interrupting a claim is "that

13  [the] full period begins to run again." Tokyo Marine, 142 F.3d at 4.

14       Here, Plaintiff allegedly sent an "extrajudicial letter" to all Defendants. The Supreme Court

15  of Puerto Rico has established three requirements for extrajudicial claims: "(1) that the claim be

16  made by the holder of the substantive right (or his counsel); (2) that it be addressed to the debtor,

17  not to a third party; and (3) that it demand the same conduct or relief ultimately sought in the

18  subsequent suit." Rosa v. Hosp. Auxilio Mutuo de Puerto Rico, Inc., 620 F. Supp. 2d 239, 248

19  (D.P.R. 2009) (citing Moran Vega v. Cruz Burgos, 537 F.3d at 21); see also Caraballo, 377 F. Supp.

20  3d at 116. When considering these requirements, the Puerto Rico Supreme Court has emphasized

21  the importance that the alleged debtor receives the extrajudicial claim. See Díaz de Diana v. A.J.A.S.

22  Ins. Co., 10 P.R. Offic. Trans. 602, 110 P.R. Dec. 471 (P.R. 1980); see also Kery, 931 F. Supp. at

23  953 (D.P.R. 1995) ("On multiple occasions, the Supreme Court has stated that the letter must "be

24  received" by the debtor.") (citations omitted). Nonetheless, what ultimately matters, is that claims

must constitute an "unmistakable manifestation of one, who threatened with the loss of his right, expresses his wish not to lose it." Lazaro v. Abbott Med. Optics, Inc., Civil No. 248 (PG), 2017 WL 1380539 at 5* (D.P.R. 2017) (citing Vargas-Ruiz v. Golden Arch Dev., Inc., 283 F. Supp. 2d 450, 456 (D.P.R. 2003)).

In the context of alleged joint tortfeasors, the Puerto Rico Supreme Court held in Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 P.R. Dec. 365 (P.R. 2012), (Slip. Trans. Op. at Docket No. 508),[7] that "the statute of limitations must be tolled separately for each joint tortfeasor . . . [and] the timely filing of a complaint against an alleged joint tortfeasor does not toll the statute of limitations against the rest of the alleged joint tortfeasors." Rivera-Carrasquillo v. Centro Ecuestre Madrigal Inc., 812 F.3d 213, 217, n. 4 (1st Cir. 2016) (citations omitted). Nonetheless, the effect of tolling the statute of limitations others also depends on whether the circumstances of the case encompass "perfect" or "imperfect" solidarity between defendants. See Ramírez-Ortiz v. Corporacion Del Centro Cardiovascular De P.R. y Del Caribe, 994 F. Supp. 2d 218, 222-23 (D.P.R. 2014) (citing Fraguada-Bonilla, 186 P.R. Dec. 365 at 186). Perfect solidarity exists "between several persons joined by a common interest, which have frequent relations among themselves or know each other," and tolling as to one co-tortfeasor will toll it as to the rest. Id. at 223-224. Differently, in an imperfect solidarity, the relationship is merely accidental or sporadic, and the statute of limitations must be tolled as to each individual co-tortfeasor. Id.

Several judges in this District have held that "a perfect solidarity obligation arises in medical malpractice cases where a hospital and physician are jointly liable for a physician's negligent care pursuant to article 1803's vicarious liability doctrine." Id. at 224. See also Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 143 (D.P.R. 2017); González-Morales v. Presbyterian

---

[7] An official English translation of this Puerto Rico Supreme Court case was submitted for the record. (Docket No. 508-1).

Civil No. 17-2197 (GAG)

Cmty. Hosp., Inc., Civil No. 13-1906 (PG), 2017 WL 212234 (D.P.R. 2017). The effect of this analysis would be that each "co-tortfeasor" need not be named within the statute of limitations period in order for a plaintiff's claim to survive a time-barred defense.

### C.   Equitable Tolling

The sparingly invoked equitable tolling doctrine is "used to excuse a party's failure to take an action in a timely manner, where such failure was caused by circumstances that are out of his hands." Dawoud v. Holder, 561 F.3d 31, 36 (1st Cir. 2009) (citing Salois v. Dime Sav. Bank, 128 F.3d 20, 25 (1st Cir.1997)). In cases were equitable tolling is available, the First Circuit requires that the one claiming equitable tolling shows: "(1) lack of actual notice of a time limit; (2) lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent, and (5) the claimant's reasonableness in remaining ignorant of the time limit. Id. It is well-settled that the equitable tolling is "reserved for exceptional cases." Chico-Velez v. Roche Products, Inc., 139 F.3d 56, 58–59 (1st Cir. 1998). Hence, "the burden of showing that the doctrine applies therefore rests with its proponent." Borgos-Taboas v. HIMA San Pablo Hosp. Bayamon, 832 F. Supp. 2d 121, 125 (D.P.R. 2011).

### D.   Unsworn Statements and Post-Summary Judgment Affidavits

Rule 56 of the Federal Rules of Civil Procedure require that affidavits or declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4); see also Pérez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001). Given that affidavits are *ex parte* documents, when offered on a summary judgment motion "are scrutinized carefully by the court to evaluate their *probative value*" and to determine whether they meet the standards set forth in FED. R. CIV. P. 56(c)(4). 10A Charles Alan Wright & Arthur R. Miller, Materials Considered on the Motion-Pleadings, Depositions, Interrogatory Answers,

**Civil No. 17-2197 (GAG)**

Admissions, Affidavits, Stipulations and Electronically Stored Information, Federal Practice and Procedure § 2722 (4th ed. 2017) (emphasis added).

The Court approaches affidavits or unsworn statements at this stage with "a scalpel, not a butcher's knife," disregarding the inadmissible portions and crediting the remaining statements. Pérez, 247 F.3d at 315. Nevertheless, a bare assertion that a statement is based on the affiant's personal knowledge will not suffice; rather, the affidavit "must be factually specific and explain the basis for that knowledge." Id. at 316; see also Barlucea Matos v. Corporación del Fondo del Seguro del Estado, Civil No. 10-1868 (GAG), 2013 WL 1010558 at *5 (D.P.R. 2013). As to the admissibility requirement, "[b]ecause the policy of Rule 56(c)(4) is that the judge should consider any material that would be admissible at trial, the rules of evidence and their exceptions *determine* what allegations the affidavit may contain." 10B Charles Alan Wright & Arthur R. Miller, Affidavits in Support of or in Opposition to Summary Judgment, Federal Practice and Procedure § 2738 (4th ed. 2017) (emphasis added).

Notable to this case, prior to the 2010 amendments, Rule 56(e), present-day Rule 56 (c)(4), required "a sworn or certified copy" of any document referred in an affidavit to be attached to it. See Nolla Morell v. Riefkohl, 651 F. Supp. 134, 139-40 (D.P.R. 1986). This requirement implied a two-fold analysis: (1) a document referred to, or described in, an affidavit must be part of the record and (2), for it to be admissible, it must be authenticated. However, these requirements were removed when Rule 56 was amended in 2010 because, as explained by the Advisory Committee Note on subdivision (c)(4), they were viewed "as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." FED. R. CIV. P. 56 (2010 Advisory Committee Note). The Advisory Committee Note on subdivision (c)(1)(A), in turn, explains that it "describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. *Materials that are not*

*yet in the record--including materials referred to in an affidavit or declaration--must be placed in the record*." Id. (emphasis added). In this regard, it seems logical that the "sworn or certified copy" or authentication requirement was eliminated from the rule precisely because the document referred to, or described in, the affidavit or unsworn declaration must already be part of the record. See Int'l Shipping Agency, Inc. v. Union de Trabajadores de Muelles Local 1740, Civil No. 12-1996 (SCC), 2015 WL 5022794 (D.P.R. 2015) (discussing the elimination of the authentication requirement).

In connection to Rule 56(c)(4)'s personal knowledge requirement, when analyzing a "sham" affidavit that "attempt[s] to manufacture an issue of fact so as to defeat summary judgment, the court may consider the timing of the affidavit, as well as the party's explanation for the discrepancies." Reyes v. Prof'l HEPA Certificate Corp., 74 F. Supp. 3d 489, 492 (D.P.R. 2015), aff'd sub nom. Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380 (1st Cir. 2016). "Such testimony can be stricken by the court when the party proffering the evidence provides no satisfactory explanation for the changed testimony." Id. The suspect timing of an affidavit, "raises serious concerns as to [its] validity and authenticity." Vargas v. Laguer, 2017 WL 1230303 at *3 (D.P.R. 2017). More so, "rather than basing the validity of an affidavit upon how self-serving the statements are to the affiant, courts *require statements contained in affidavits to be factually specific and supported by the record*." Malavé-Torres v. Cusido, 919 F. Supp. 2d 198, 204 (D.P.R. 2013) (emphasis added).

As a threshold matter, the Court holds that Plaintiff's claims began to accrue on February 21, 2016 -when Mr. Calderón-Marrero passed away. Even though, Plaintiff Calderón-Amézquita was aware that possible negligent acts occurred prior to this date, under Commonwealth law "if a person entitled to bring an action dies before the expiration of the term limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives, *after* the expiration of that time, and within one year of his death." P.R. LAWS ANN. tit. 32, § 255 (emphasis

Civil No. 17-2197 (GAG)

added). This action is known as a survivorship claim. See Cason v. Puerto Rico Elec. Power Auth., 770 F.3d 971, 974 (1st Cir. 2014); Montalvo v. González-Amparo, 587 F.3d 43, 48 (1st Cir. 2009).

Regardless of whether Mr. Calderón-Marrero (if he had been alive), would have been entitled to bring an action starting on January 24, 2016 -the day he was admitted to the hospital- it is undisputed that when he died, his son Calderón-Amézquita had a "survivorship action." Cason, 770 F.3d at 974. Thus, the Court has no doubt that the present suit is a wrongful death suit, whose accrual date "[arose] at the time of death." Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 14 (1st Cir. 2005).[8]

The Court shall now address each of Defendants time-barred arguments individually. The Court stresses that, even though Plaintiff is the non-movant summary judgment party, he carries the burden of proving that his claims are timely, Tokyo Marine, 142 F.3d at 4, because the defense was raised and since the present action was brought more than a year after the decedent's death. Thus, Plaintiff has to prove that he lacked the requisite "knowledge at the relevant times" as to the identity of all alleged tortfeasors in order to apply a different accrual date from February 21, 2016, Espada, 312 F.3d at 4, or prove that he adequately interrupted the statute of limitations, Tokyo Marine, 142 F.3d at 4. Finally, the Court also bears in mind that "[o]n issues where the nonmovant bears the ultimate burden of proof, [he] must present *definite, competent evidence* to rebut the motion." Mesnick, 950 F.2d at 822 (emphasis added).

The relevant dates for Plaintiff's claims are: (1) on February 21, 2016, Mr. Calderon-Marrero died; (2) on February 13, 2017, Plaintiff sent a letter addressed to Defendants Doctors' Hospital and Dr. Victor Rivera-Cruz, as Director of Medical Emergency, among other people who are not

---

[8] As a result of this ruling, Plaintiff's Informative Motion regarding Adjudication of Summary of Judgment Motion (Docket No. 578) is hereby **NOTED** and Defendant Dr. Rivera-Cruz Motion to Strike (Docket No. 579) is hereby deemed **MOOT**.

Civil No. 17-2197 (GAG)

included in this suit, and (3) on September 13, 2017, Plaintiff filed the present action (Docket No. 1). It was amended on September 15, 2017 and both complaints include Defendants Dr. Rivera-Cruz, Dr. Ávila-González, Dr. Torres-Sánchez and Doctors' Hospital; on April 25, 2018, Plaintiff allegedly learns about Defendants Dr. Hernández-Román and GEVRC through the parallel Commonwealth court proceedings, and on April 30, 2018, Plaintiff amends his complaint again (Docket No. 68) to include and substitute defendants, Dr. Hernández-Román and GEVRC.

### 1. *Dr. Ávila-González and Dr. Torres-Sánchez*

Dr. Ávila-González and Dr. Torres-Sánchez's position is straight-forward: they allege they never received a letter from Plaintiff intended to serve as an "extrajudicial" claim before the original Complaint was filed on September 13, 2017. Plaintiff opposes this argument by averring that, in their motions, Defendants rely on Spanish language case-law without advancing the required English translations and their position runs afoul the well-pleaded complaint allegations and a prior ruling issued by this Court. In the alternative, Plaintiff posits that he should be allowed to amend the complaint once again to address the time-barred defense as to Defendants Dr. Ávila-González and Dr. Torres-Sánchez.

The Court agrees with Defendants Dr. Ávila-González and Dr. Torres-Sánchez that the present case is time-barred as to the claims against them. Foremost, Plaintiff misrepresents the Court's ruling when it denied then-Defendant Dr. Oroma's Motion to Dismiss, who raised the time-barred affirmative defense. (Docket Nos. 112; 275). This Court explicitly ruled that: "The [statutes of] limitations issues can be renewed *after* the completion of discovery, at the summary judgment stage." (Docket No. 275) (emphasis added). The Court's ruling was not on the merits of the defense, but rather procedural due to the case's early stage. Now, *after discovery has concluded*, and other Defendants have raised the timeliness arguments the Court addresses the statute of limitations issue under the applicable standard of review.

Civil No. 17-2197 (GAG)

1    Plaintiff fails to submit evidence nor creates an issue of genuine material fact as to
2 Defendants' assertion of not having received an extrajudicial claim, tolling the one-year statute of
3 limitations. Plaintiff merely relies on conclusory allegations, without proof, that he allegedly sent an
4 extrajudicial claim to all Defendants on February 18, 2017. (Docket No. 516 at 6). Interestingly
5 enough, *on the same date* Plaintiff filed his opposition to Defendants Dr. Ávila-González and Dr.
6 Torres-Sánchez's motions, without exhibits; he also opposed GEVRC's motion including as an
7 exhibit the alleged extrajudicial claim-letter. (Docket Nos. 516; 517).

8    Provided that all pending dispositive motions were filed after discovery concluded, the Court
9 can only make the reasonable inference that such extrajudicial claim does not exist, or it would have
10 otherwise been submitted to the record. See Forestier Fradera v. Municipality of Mayaguez, 440
11 F.3d 17, 21 (1st Cir.2006) ("Summary judgment may be appropriate . . . if the non-moving party's
12 case rests merely upon conclusory allegations, improbable inferences, and unsupported
13 speculation.") (citations and internal quotation marks omitted). Ultimately, Plaintiff fails to provide
14 "definite, competent evidence to rebut" Defendants Dr. Ávila-González and Dr. Torres-Sánchez's
15 arguments. Mesnick, 950 F.2d at 822.

16    Even if the Court were to *arguendo* entertain Plaintiff's remaining opposing claims, he will
17 still fail to meet his burden. For example, the fact that a party relies on some Spanish language
18 case-law does not imply that it automatically merits dismissal. The Court disavows this practice yet
19 assures that it did not rely on them to decide the issues pending disposition. See Puerto Ricans For
20 Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) ("It is crystal clear that [when] none
21 of the Spanish language documents bear on any of the issues that the district court [finds] dispositive
22 in adjudicating, the presence of untranslated documents will not constitute reversible error.")
23 (citations and internal quotation marks omitted). The Court has no need to rely on the Spanish
24 language case-law cited by Defendant because the Commonwealth's statute of limitations for torts

Civil No. 17-2197 (GAG)

has been abundantly discussed by this District and the First Circuit. See e.g. Rodríguez Narvaez v. Nazario, 895 F.2d 38 (1st Cir. 1990). On the other hand, the Court will not allow Plaintiff to amend the Complaint once more, especially at the summary judgment stage of the proceedings following prolonged discovery. Plaintiff Calderón-Amézquita has not shown any substantial or convincing argument that so warrants it. See Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994); see also Nkihtaqmikon v. Bureau of Indian Affairs, 453 F. Supp. 2d 193, 201 (D. Me. 2006).[9]

For the above reasons, Plaintiff did not meet the burden of proving that his claims are not time-barred. This action was filed on September 13, 2017, one-year after the statute of limitation began to accrue, and Plaintiff failed to provide evidence as to any extrajudicial actions that could have tolled his claims against Defendants Dr. Ávila-González and Dr. Torres-Sánchez. Accordingly, the Court **GRANTS** Defendants Dr. Ávila-González and Dr. Torres-Sánchez's Motions to Dismiss at Docket Nos. 502 and 505.

### 2.  GEVRC

Defendant GERVC argues Plaintiff's claims are time-barred because the original complaint was filed one-year after the statute of limitations began to accrue on February 21, 2016 and it never received an extrajudicial claim tolling said action. Furthermore, GEVRC stresses that Plaintiff had all available tools to inquire about his alleged tortfeasors yet failed in being diligent. Id. at 8. In his opposition, Calderón-Amézquita argues that under the cognitive theory of damages, the statute of limitations as to GERVC began to run on April 25, 2018 when Plaintiff first learned about it through the parallel Commonwealth court proceedings or, in the alternative, that the claims against GERVC were tolled on February 13, 2017, under the equitable tolling doctrine, because the hospital failed provide the required information about said corporation. (Docket No. 517 at 5-6).

---

[9] Plaintiff already sought to amend the Complaint and Magistrate Judge Vélez-Rivé denied it, a ruling the undersigned confirmed. (Docket Nos. 370; 403).

Plaintiff's opposition is based on the fact that he "first learned about the existence of VRC Group and Dr. Carlo[s] Hernández on April 25, 2018 through answers provided by the Hospital for an interrogatory served in parallel State Court litigation." (Docket No. 517-1 ¶ 11). This fact is presented by way of Plaintiff's own statement under penalty of perjury dated December 9, 2019, which was introduced on the record the following day, December 10, 2019. Id. The Court has examined the docket and the only other possible reference to this fact can be traced to Plaintiff Calderón-Amézquita's answers to questions posed during his second deposition held on June 22, 2019. (Docket No. 505-2). According to this deposition, GERVC's attorney asked Plaintiff: "When did you become aware that Grupo de Emergencias VRC was the corporate entity that was in charge of administering and of the administration and operation of the hospital's ER?" Plaintiff answered, "when this whole process began." Id. at 136-37. He then clarified and stated, "this whole legal process against the hospital and the doctors involved." Id. at 137. GERVC's attorney further asked "[t]his whole process referring as to the complaint?" and Plaintiff answered "Yes." Id.

Although GEVRC did not specifically contest this fact when it replied to Plaintiff's opposition (Docket No. 549 at 2), it is nonetheless true that GEVRC asserts that: "The interrogatories that plaintiff refers to as to providing the information concerning GEVRC, were part of the discovery conducted in a state court case, in which neither Dr. Yemal Calderon nor GEVRC are parties." (Docket No. 549 at 8). This statement puts into question Plaintiff's personal knowledge of said information.

Regardless, the Court holds that Plaintiff's statement under penalty of perjury should be disregarded because allowing it would hamper the "procedural integrity of a summary judgment" process. Mahan v. Bos. Water & Sewer Comm'n, 179 F.R.D. 49, 53 (D. Mass. 1998). First, as Defendant GEVRC accurately points out, Plaintiff is not a party in the parallel Commonwealth proceedings and could have *only* been informed about GEVRC existence through his siblings or

attorney. This inference alone defeats the "touchstone" analysis necessary to prove personal knowledge because Plaintiff would lack personal knowledge as to this specific information. Pérez, 247 F.3d at 315. Moreover, Rule 56, as interpreted by the 2010 Advisory Committee, still requires that any document reference in a declaration "must be placed on the record." FED. R. CIV. P. 56 (2010 Advisory Committee Note). The alleged answers to these interrogatories are nowhere to be found on the record; they were not even included in Plaintiff's motion seeking leave to amend the initial complaint and include GEVRC. See Serrano-Pagán v. Bernal Echeandia, Civil No. 05-1429 (ADC), 2007 WL 9761359, at *2 (D.P.R. 2007) ("Since the affidavit is based almost exclusively on the content of documents contained in a personnel file, Defendant was obligated to provide copies of said documents - no such documents were ever provided."). Plaintiff's procedural deficiency is not an issue of authentication or evidence admissibility, as previously required by Rule 56(e), but rather an omission on the record about a document referenced in an affidavit used to base a fact that could potentially defeat GEVRC's entire motion for summary judgment.

The Court finds it suspicious that Plaintiff had no difficulty in submitting to record the alleged extrajudicial letter sent to Doctors' Hospital, which he directly references in the statement under penalty of perjury but was unable provide this vital parallel Commonwealth court document. (Docket No. 517). This does not seem as an unintentional omission because Plaintiff had already submitted to the record, for purposes of his motion for summary judgment against Defendant Doctors' Hospital, translated documents arising from parallel Commonwealth court proceedings. (Docket No 515).

Despite the above, the unsworn statement before the Court also borderlines a sham affidavit. The timing of the declaration, which is dated the day before Plaintiff's opposition was filed, alongside with the fact that Calderón-Amézquita fails to provide an explanation, raises concerns as to its authenticity and validity of Plaintiff's proffered unsworn statement. See Reyes, 74 F. Supp. 3d

1    at 492, aff'd sub nom. Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380 (1st Cir.

2    2016). Similarly, in his deposition Plaintiff stated that he learned about GERVC "when this whole

3    process *began*" and specified he meant the time of filing the initial complaint. (Docket No. 505-2 at

4    136-37). This assertion contradicts Plaintiff's current version that he learned about GEVRC's

5    identity *during* this legal process. (Docket No. 517-1 ¶ 11). If a statement contained in a given

6    affidavit was intended to be a "more specified" version of a previous statement, then it could possibly

7    be considered. See Rivot-Sánchez v. Warner Chilcott Co., 707 F. Supp. 2d 234, 260 (D.P.R. 2010).

8    Yet, in the instant case, this would not eliminate the dark cloud that still hovers over the affidavit

9    because Plaintiff has never provided an explanation as to why he presented this unsworn statement

10   *after* the discovery period had elapsed and motions summary judgment were filed.

11          For the reasons stated above, the Court disregards paragraph eleven of the unsworn statement

12   for failing to comply with the standard set forth in FED. R. CIV. P. 56(c)(4).

13          Now, under this scenario, the Court can only consider Plaintiff's argument that the equitable

14   tolling doctrine applies. The Court concludes that it does not apply herein because this "sparingly"

15   used doctrine must be left for exceptional circumstances, which are no present in this case. See

16   Chico-Vélez, 139 F.3d at 58-59. Furthermore, if Plaintiff had *properly* included the document on

17   the record, which would allow the Court to consider April 25, 2018 as an accrual date, then he would

18   have had the benefit of the cognitive theory's reasonableness test, which directly mirrors that set

19   forth for equitable tolling doctrine. Hence, Plaintiff's substitution of "Corporation Z" for GEVRC

20   must relate back to September 13, 2017-the date of the filing of the original Complaint. See Aponte

21   Bermudez v. Berrios, Civil No. 15-1034 (CVR), 2016 WL 4708294, at *3 (D.P.R. 2016) (explaining

22   the relations-back principle); Nohemi Meléndez v. Hosp. Hermanos Meléndez, Inc., 608 F. Supp.

23   2d 196, 200 (D.P.R. 2008) (same). Because no extrajudicial claim tolling the tort claims was

24   addressed, or sent specifically to GERVRC, the actions against it are time-barred under the

**Civil No. 17-2197 (GAG)**

_Fraguada-Bonilla_ "imperfect" solidarity doctrine because Calderón-Amézquita failed to interrupt the statute of limitations against each alleged joint tortfeasor. See _López-Rivera_, 290 F. Supp. 3d at 14; _Ramírez-Ortiz_, 994 F. Supp. 2d at 223. The Court highlights that Defendant does not question whether GERVRC has "perfect" solidarity with any other Defendant in this case; it is, therefore, assumed.[10] Ultimately, to prevail, Plaintiff had the burden to provide "definite, competent evidence to rebut" Defendant GERVC's timeliness contention. Once again, Plaintiff fails. _Mesnick_, 950 F.2d at 822.

Consequently, the Court finds that Plaintiff's claims against GERVRC are time-barred. The Court hereby **GRANTS** Defendant GERVRC's Partial Motion for Summary Judgment at Docket No. 506 and dismisses all claims against it.

### 3. _Dr. Rivera-Cruz_

Dr. Rivera-Cruz avers that the claims against him, as Doctors' Hospital Emergency Room director and physician, are time-barred because by the time of filing of Plaintiff's original complaint -September 13, 2017- the statute of limitations had elapsed. Plaintiff Calderón-Amézquita opposes arguing that the statute of limitations against Dr. Rivera-Cruz was properly tolled through the extrajudicial letter sent on February 13, 2017. As to the claims against Dr. Rivera-Cruz as director and owner of GERVC, Plaintiff reiterates the same arguments put forward in its opposition to GERVC. Dr. Rivera-Cruz replies alleging that there is no evidence of notice and receipt of the extrajudicial letter. Plaintiff opposes stating the extrajudicial claim letter complied with all requirements.

---

[10] Plaintiff did not raise an argument as to whether GERVRC has "perfect" solidarity with any other Defendant in this case. (Docket Nos. 517; 551). Plaintiff Calderón-Amézquita limits this argument to the relationship between Defendants Dr. Rivera-Cruz and Doctors' Hospital. (Docket No. 522 at 26). Therefore, said contention regarding GERVRC has been waived.

Civil No. 17-2197 (GAG)

As threshold matter, provided that all GERVRC's claims have been ruled upon as being time-barred, the Court need not address Plaintiff's claims as to Defendant Dr. Rivera-Cruz in his capacity as director and owner of GERVC. Nonetheless, the Court must stress that even if these claims would persist it could not entertain them because Plaintiff indirectly petitions this Court to "pierce the corporate veil" by deciding if Defendant Dr. Rivera-Cruz received the extrajudicial claim in said capacity, before analyzing if he may be liable for the alleged wrongdoing. See P.R. LAWS ANN. tit. 14, § 3501. The Court would have not done so because Plaintiff has not submitted "strong and robust evidence" to merit the piercing at this stage of the proceeding and vaguely addressed this claim after Defendant Dr. Rivera-Cruz raised it. (Docket No. 522 at 21-22). See Milan v. Centennial Commc'ns Corp., 500 F. Supp. 2d 14, 26 (D.P.R. 2007); Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980).

Now, as to Dr. Rivera-Cruz' claims that the present suit is time-barred in his capacity as a physician and Emergency Director at Doctors' Hospital, the Court must consider if Plaintiff adequately tolled the statute of limitations through the extrajudicial claim-letter. The Court agrees with Plaintiff that the extrajudicial claim sent complies with the three requirements set out by the Supreme Court of Puerto Rico. Rosa, 620 F. Supp. 2d at 248 (D.P.R. 2009). The letter was: (1) made by then-counsel to Plaintiff on his behalf; (2) addressed to Dr. Rivera-Cruz as Emergency Room Director, among other people and (3) it specified that it arises out of the alleged negligent acts and omissions caused to Plaintiff's deceased father. (Docket No. 517-2 at 1). The letter further makes the "unmistakable manifestation" that it "constitutes an extrajudicial claim." Vargas-Ruiz, 283 F. Supp. 2d at 456. The Court is satisfied that it indeed complies with Commonwealth law.

Defendant Rivera-Cruz submitted an unsworn statement under penalty of perjury arguing that he "never received an extrajudicial claim in [his] personal capacity" and that he first became aware of the case when he "was served with summons in [his] personal capacity." (Docket No. 541-

Civil No. 17-2197 (GAG)

1 ¶ 4). When interpreting Commonwealth case-law on the issue of notice of receipt, this District Court has held that after the Díaz de Diana decision, *supra* at 17, which discussed the receipt issue, "subsequent opinions of the Court have, in *dicta,* merely required that the claim *arrive* at its destiny." Kery, 931 F. Supp. at 953 (emphasis in original). The extrajudicial claim contains a Doctors' Hospital "received" stamp, which satisfies this requirement. Id.

Moreover, similar to the Court's reasoning regarding Plaintiff's affidavit, Defendant Rivera-Cruz's declaration, although self-serving, also borderlines a "sham affidavit." Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380 (1st Cir. 2016). The statement was filed as an attachment to Defendant's reply and dated just a few days before that motion itself was filed. (Docket Nos. 541-2). This action raises concerns as to its authentic and validity, Vargas, 2017 WL 1230303 at *3, because Defendant *did not address* this issue when it originally filed its motion for partial summary judgment arguing that the claim was time-barred. (Docket No. 503). Consequently, the Court shall disregard paragraph four of the unsworn statement for failing to comply with the standard set forth in FED. R. CIV. P. 56(c)(4).

For the foregoing reasons, the Court finds that Plaintiff properly tolled the statute of limitations, which began to run on February 21, 2016, and was tolled through the extrajudicial claim letter sent to Dr. Rivera-Cruz, as Emergency Room Director on February 13, 2017. Defendant's Motion for Partial Summary Judgment is hereby **DENIED** as to the timeliness arguments. The Court will subsequently consider remaining arguments.

### 4.  *Dr. Hernández-Román*

Lastly, Defendant Dr. Hernández-Román argues in his motion for partial summary judgment that Plaintiff's claims against him are time-barred because the original complaint was filed on September 13, 2017 and he was also added late as a party. In his opposition, Calderón-Amézquita posits that, under the cognitive theory of damages, the statute of limitations against Dr. Hernández-

Civil No. 17-2197 (GAG)

Román began to run on April 25, 2018 -when he first learned about him through the parallel Commonwealth court proceedings.

Dr. Hernández-Román's time-barred argument mirrors GERVC's position as to this issue because Plaintiff has always argued that he first became aware of Dr. Hernández-Román through the parallel Commonwealth court proceedings on April 25, 2018. As discussed above, Plaintiff failed to provide necessary documents to comply with the standard set forth in FED. R. CIV. P. 56(c)(4).

Thus, the Court holds that the accrual time for the actions against Dr. Hernández-Román is February 21, 2016 and thus, Plaintiff's claims against him are time-barred. Mr. Calderón-Amézquita's substitution of "Dr. John Doe and Dr. John Roes" described as "other healthcare professionals employed by the Hospital, subcontracted and/or with medical privileges . . . who were on duty at the Hospital on January 23 and 24 of 2016." (Docket No. 5 ¶ 33) for Dr. Hernández-Román, must relate-back to September 13, 2017 when the original Complaint was filed. See Aponte Bermúdez, 2016 WL 4708294 at *3. Plaintiff also argues that the equitable tolling doctrine should apply; yet as explained above, the Court disagrees with this position. Given that no extrajudicial claim tolling the tort claims was addressed or sent specifically to Dr. Hernández-Román, the actions against him are time-barred under the Fraguada Bonilla "imperfect" solidarity doctrine because Plaintiff failed to interrupt the statute of limitations against each alleged joint tortfeasor. See López-Rivera, 290 F. Supp. 3d at 14; Ramírez-Ortiz, 994 F. Supp. 2d at 223.[11]

For this reason, the Court hereby **GRANTS** Defendant Dr. Hernández-Román Partial Motion for Summary Judgment at Docket No. 511 and dismisses all pending claims against him.

---

[11] Similarly to Defendant GERVC, Plaintiff did not raise an argument as to whether Dr. Hernández-Román has "perfect" solidarity with any other Defendant in this case. (Docket Nos. 529; 563). Therefore, said contention regarding Defendant Dr. Hernández-Román has been waived and the Court assumes it does not exist.

Civil No. 17-2197 (GAG)

### III.    Medical Malpractice

Still pending before the Court is whether Dr. Rivera-Cruz is entitled to dismissal of the claims against him because Plaintiff failed to establish a medical malpractice claims and, if Plaintiff Calderón-Amézquita is entitled to partial summary judgment because it is factually uncontested that Doctors' Hospital is liable for his father's alleged injuries and wrongful death.

A.  Motions for Partial Summary Judgment

Dr. Rivera-Cruz argues that the medical malpractice claims against him, as a physician, should be dismissed because it is uncontested that he did not personally provide treatment to the decedent. (Docket No. 503 at 1). Defendant posits that according to Calderón-Amézquita's deposition testimony and several of Plaintiff's expert witnesses, specifically, Dr. Edwin Miranda, Dr. Loren Laine and Dr. Pedro Rodríguez, Dr. Rivera-Cruz was not involved in any "intervention, interaction or treatment" relating to the decedent. Id. at 5. For this reason, Dr. Rivera-Cruz avers that a patient-relationship never existed and it is legally impossible for him to have breached the medical standard of care. Id. at 14.

Plaintiff opposes arguing that "the evidence of record irrefutably shows that [Defendant Dr. Rivera-Cruz] incurred in a plethora of negligent actions and omissions in connection with the medical services provided to Dr. Calderón's father at the Hospital's Emergency Room." (Docket No. 522 at 18). Plaintiff posits that Dr. Rivera-Cruz was negligent in relation to his "dual role" at Doctors' Hospital: (1) as supervisor and director of the Emergency Room and (2) as owner and sole employee of GEVRC, company in charge of administering the emergency room and overseeing its physician. Id. at 18-22. Plaintiff supports these assertions by citing evidence submitted to the record, specifically Dr. Edwin Miranda's expert testimony and the answers during depositions by Plaintiff, Dr. Rivera-Cruz and other Defendants. Id. Calderón-Amézquita also alludes to the fact that he, himself, will present expert testimony on trial as to Dr. Rivera-Cruz's negligent acts. Id. at 21.

**Civil No. 17-2197 (GAG)**

In his reply, Dr. Rivera-Cruz asserts that Plaintiffs fails to comply with the anti-ferret rule and insists that claims against him as Emergency Room director or owner of GEVRC "do not negate the irrefutable fact that there is no cognizable medical malpractice case against Dr. Rivera since he never provided medical treatment to Plaintiff's father." (Docket No. 541 at 16). Furthermore, Defendant argues that Dr. Miranda's opinion, presented in an unsworn expert witness report, and Plaintiff's future trial testimony lacks probative value and cannot be presented at the summary judgment stage. Id. at 17. In his sur-reply, Plaintiff holds the anti-ferret rule discussion is unnecessary given that he admitted all statements of uncontested facts proffered by Defendant and further posits that Dr. Miranda's expert testimony can be considered at this stage under applicable case-law. (Docket No. 546).

As to the other remaining dispositive motion, Plaintiff Calderón-Amézquita petitions this Court to grant partial summary judgment against Doctors' Hospital on two grounds. (Docket No. 509). First, that, at the parallel Commonwealth proceeding, the hospital already admitted liability for the same claims as in federal court and these admissions "constitute dispositive irrefutable evidence" of negligence. (Docket No. 509 at 17). In the alternative, Plaintiff holds that the evidence already submitted into the record warrants the entry of summary judgment in his favor because they prove that "the negligent actions and omissions of the Hospital's physicians, nurses and ancillary personnel caused Dr. Calderon's father to prematurely die." Id. at 19.

Doctors' Hospital opposed this motion arguing that "admission of liability related to the non-medical personnel in the state case cannot be used as a judicial admission" (Docket No. 566 at 18) and, more importantly, it posits that Plaintiff still needs to prove causation between the hospital's omissions and his father's death. Id. Additionally, Defendant presents several allegedly genuine and material issues of fact, via its own additional statement of uncontested facts that would preclude the Court from entering summary judgment. Id. at 16-17. Finally, Doctors' Hospital avers that for it to

be vicariously liable, the Court would need to determine that an emergency room doctor "was directly liable for his actions and/or omissions to the plaintiffs and then, if the Court finds that the doctor is liable . . . it would have to find that [GEVCR] was also liable before it could conclude that the Hospital responds for the liability of the emergency room physicians." Id. at 19.

Plaintiff replied averring that Doctors' Hospital liability admission in the parallel Commonwealth proceeding encompasses both negligence and causation and thus, he requests this Court to hold a damages-exclusively trial similar to what happened before the Commonwealth court. (Docket No. 570 at 6-7). Likewise, Calderón-Amézquita puts forward that Defendant fails to abide to the anti-ferret rule, presents Dr. Rivera-Cruz's deposition testimony as unpermitted expert testimony and proffers an unsworn expert testimony which is inadmissible at the summary judgment stage. (Docket No. 570 at 8-11). Doctors' Hospital filed a sur-reply insisting that its liability admission at the Commonwealth court is circumscribed to non-medical personnel and specifically stated, via court documents, that it was not admitting liability as to Dr. Ávila-González, Dr. Torres-Sánchez and GEVRC, which were also part of the parallel proceeding. (Docket No. 575 at 2). Notwithstanding, it posits that Plaintiff still needs to prove causation by preponderance of the evidence Id. at 3-5. Doctors' Hospital also argues that it complies with the applicable local rules for opposing a motion for summary judgment and proceeds to question the fact that Plaintiff wants to exclude deposition testimony that his counsel elicited and that he relies on for opposing other motions for summary judgment pending before this Court. Id. at 9-11.

B.  Local Rule 56

Local Rule 56(b) requires a party moving for summary judgment to include a "statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." L. Cv. R. 56(b). The opposing party "shall admit, deny or qualify the facts supporting the motion for summary judgment." Id. This allows the court "to easily

determine the disputed facts." Malave-Torres v. Cusido, 919 F. Supp. 2d 198, 207 (D.P.R. 2013). Furthermore, "a party's denial or qualification of a proposed fact must be *strictly limited to the issue therein raised*." Natal Pérez v. Oriental Bank & Tr., 291 F. Supp. 3d 215, 219 (D.P.R. 2018) (emphasis added). The opposing party "shall support each denial or qualification by a record citation." Id. If the facts are not properly controverted, they shall be deemed admitted and uncontroverted. L. Cv. R. 56(e). See also Bautista Cayman Asset Co. v. J.A.M.A. Dev. Corp., 322 F. Supp. 3d 266, 267-68 (D.P.R. 2018); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010).

Even though the primary purpose of Local Rule 56 "is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), a court must responsibly review the record, especially the evidence upon which the statement of uncontested facts is based on, to adequately evaluate a motion for summary judgment. Id.

C. Applicable Law and Analysis

The statute that governs the liability of a physician in a medical malpractice suit is Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, which states that: "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id. To prevail in a medical malpractice, claim under Article 1802 a plaintiff "must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Marcano Rivera v. Turabo Medical Center Partnership, 415 F.3d 162, 167 (1st Cir. 2005). This standard of care is based on a national standard. See Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 43 (1st Cir. 2005).

Civil No. 17-2197 (GAG)

To prove the "casual nexus" set forth in the third requirement, a plaintiff must establish "adequate causation" which "is not every condition without which a result would not have been produced, but that which ordinarily produces it according to general experience." Laboy-Irizarry v. Hosp. Comunitario Buen Samaritano, Inc., 2019 WL 3311270 at *9 (D.P.R. 2019) (quoting Cárdenas Maxan v. Rodriguez Rodriguez, 125 P.R. Dec. 702, 710, P.R. Offic. Trans. (P.R. 1990) (unnumbered official translation found on the Westlaw search engine). Several Puerto Rico Supreme Court and First Circuit precedents "have repeatedly held that expert testimony is required to prove causation in medical malpractice suits." See Santa Cruz Bacardi v. Metro Pavia Hosp., Inc., Civil No. 16-2455 (RAM), 2020 WL 249433 at *6 (D.P.R. 2020) (discussing First Circuit case-law that explains this requirement). See e.g. Cortés-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 191 (1st Cir. 1997). As whole, a plaintiff must establish "by a preponderance of the evidence" that the Defendants' negligent conduct was "the factor that most probably caused the harm suffered." Rojas-Ithier, 394 F.3d at 43.

As to a hospital's liability towards its patients, it is a firmly established doctrine that said institutions "owe[] their patients that degree of care that would be exercised by a reasonable and prudent man in the same conditions and circumstances." Ramírez-Vélez v. Centro Cardiovascular De Puerto Rico, Civil No. 05-1732 (PG), 2007 WL 3146618 at *3-4 (D.P.R. 2007). Under Article 1802, a hospital may be held liable if it fails to enact institutional policies that could hamper a patient's care. Márquez Vega v. Martínez Rosado, 116 P.R. Dec. 397, 16 P.R. Offic. Trans. 487 (1985). For example, a hospital may be held liable in situations where it: (1) lacks medical equipment which was foreseeably necessary for treatment, Lozada v. E.L.A., 116 P.R. Dec. 202, 16 P.R. Offic. Trans. 250 (P.R. 1985); (2) breaches the duty to maintain a patient's medical records in excellent conditions, Núñez v. Cintrón, 115 P.R. Dec. 598, 15 P.R. Offic. Trans. 786 (P.R. 1984), and (3) has an emergency room that fails to meet the standard of care set for them, Pérez Cruz v. Hosp. La

Civil No. 17-2197 (GAG)

Concepción, 115 P.R. Dec. 721, 15 P.R. Offic. Trans. 952 (P.R. 1984).[12] Under these scenarios, a physician and a hospital may be held jointly liable. Núñez, 115 P.R. Dec. at 606, 15 P.R. Offic. Trans. at 797.

Notwithstanding, a hospital's liability has been mostly framed within the vicarious liability doctrine established by Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5142. Sagardía De Jesus v. Hosp. Aux. Mutuo, 177 P.R. Dec. 484, P.R. Offic. Trans. (P.R. 2009) (unnumbered official translation found on the Westlaw search engine). Said statute states that:

> The obligation imposed by [Article 1802] . . . is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible . . . Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.

Id. See also Morales v. Monagas, 723 F. Supp. 2d 416, 419 (D.P.R. 2010).

Thus, "vicarious liability determination first requires plaintiff[] to establish *an underlying tort* and it is not until then *that vicarious liability would attach*." Casillas Sanchez v. Ryder Mem'l Hosp., Inc., Civil No. 11-2092 (FAB/CVR), 2013 WL 12409079 at *5 (D.P.R. 2013) (emphasis added).

The vicarious liability doctrine has been expanded to include other circumstances under which doctors who, although not employees, are still part of the hospital staff or have been granted privileges to work there. See Márquez Vegas, 116 P.R. Dec. 401-04, Offic. Trans. 487 at 493-95 (explaining the "respondent superior" theory, "corporate negligence" and "apparent or ostensible agency" doctrine). In these circumstances, "whether a hospital may be held liable for the malpractice committed exclusively by a physician who is not an employee depends on the patient-hospital relationship." García Colón v. García Rinaldi, 340 F. Supp. 2d 113, 127 (D.P.R. 2004). Additionally,

---

[12] The leading case as to a hospital's Article 1802 liability regarding emergency rooms is Flores Ramírez v. Maldonado, 138 D.P.R. 722 (1995), yet there is no official English translation for it nor have the parties provided a certified translation. Hence, the Court will not base any holding on this decision's reasoning.

a hospital may be held liable in situations "where a patient seeks medical aid directly from a hospital and the hospital provides the treating physician-regardless of the physician's employment relationship with the hospital." Casillas-Sanchez v. Ryder Mem'l Hosp., Inc., 960 F. Supp. 2d 362, 366 (D.P.R. 2013).

Finally, the First Circuit has held that "[a]lthough a pleading in one case is not a conclusive judicial admission in a later one, it is treated as an ordinary admission which can be contradicted by other evidence." United States v. Raphelson, 802 F.2d 588, 592 (1st Cir. 1986) (citations omitted). See also González v. Walgreens Co., 918 F.2d 303, 305 (1st Cir. 1990). In this regard, "[l]itigants are under an obligation not to allege facts that have no evidentiary support." Bucci v. Essex Ins. Co., 393 F.3d 285, 296 (1st Cir. 2005); see FED. R. CIV. P. 8(e)(2) and 11(b)(3) (stating factual allegations in pleadings should have evidentiary support or are likely to have such support after investigation). Consequently, this sums up to: "All judicial admissions in one case are only evidentiary admissions in another case." 6 Michael H. Graham, Handbook of Fed. Evid. § 801:26 n. 9 (8th ed.); see also Int'l Shipping Agency, Inc. v. Union de Trabajadores de Muelles Local 1740, Civil No. 12-1996 (SCC), 2015 WL 5022794, at *9, n. 17 (D.P.R. 2015); Carruthers v. Flaum, 388 F. Supp. 2d 360, 370 (S.D. N.Y. 2005).

### 1. Dr. Rivera-Cruz

Defendant Dr. Rivera-Cruz solely argues that Plaintiff Calderón-Amézquita fails to prove that he is liable for incurring in medical malpractice because he never treated Mr. Calderón-Marrero as his patient. Plaintiff does not challenge this proposition, yet puts forward that Dr. Rivera-Cruz, as Emergency Room director and owner of GEVRC, can be held liable because he acted negligently in his supervisory role, under both Article 1802 and 1803.

First, the Court will not address any argument raised concerning Dr. Rivera-Cruz and his role in GEVRC because all claims against said co-defendant have already been dismissed as time-barred.

**Civil No. 17-2197 (GAG)**

As to Dr. Rivera-Cruz's position that he never directly treated the deceased, the Court holds that Plaintiff indeed does not contest this fact. (Docket No. 522 at 2). However, after reviewing all claims the Court finds that Calderón-Amézquita never argued that Defendant should be held liable for directly treating his father as a patient. (Docket No. 68). According to Plaintiff's allegations, he states four causes of action against Dr. Rivera-Cruz: (1) medical malpractice claim, under Article 1802; (2) commercial liability claim, under Article 1802; (3) "negligence in the performance of supervisory duties" claim, under Articles 1802 and 1803, and (4) "director's liability" claim, under Article 1802. (Docket No. 68 ¶¶ 196-241). When reviewing the first cause of action (Medical Malpractice), Plaintiff specifically alleges:

> Dr. Ávila, Dr. Torres, Dr. León, Dr. Zayas, *Dr. Rivera*, Dr. D'Acosta, Dr. Hernández, Dr. Orama, Dr. Vicens and all Hospital personnel who either negligently provided subpar medical care or negligently failed to provide medical care to Mr. Calderón on January 23 and 24 of 2016 are jointly and severally liable for the damages claimed in this case.

Id. ¶ 197 (emphasis added).

Aside from this specific reference to "Dr. Rivera," Plaintiff includes him when detailing other medical malpractice allegations while using the word "co-defendant." Id. 199-206. Yet, immediately following these general allegations, Plaintiff states that:

> As the Director of the Hospital's Emergency Room, Dr. Rivera negligently failed to supervise, monitor and correct the subpar performance that eventually caused Mr. Calderón's death. On information and belief, Dr. Rivera also negligently failed to institute proper policies and procedures as well as to ensure compliance with those already in place.

Id. ¶ 207.

After reviewing theses submissions, the Court holds that this more specific allegation at Docket No. 68 ¶ 207 is Plaintiff's *only* medical malpractice cause of action, under Article 1802, against Defendant Dr. Rivera-Cruz. This is further confirmed by the third and fourth causes of action

Civil No. 17-2197 (GAG)

which reiterate Defendant's alleged breach of his supervisory and directorial duties as director of Doctors' Hospital Emergency Room.

For this reason, the Court cannot grant summary judgment and dismiss a cause of action that was not raised in the Amended Complaint. See Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1171 (1st Cir. 1995) (describing that the main purpose of the pleadings rules is to protect a defendant's "inalienable right to know in advance the nature of the cause of action being asserted against him."). Plaintiff's pleading is adequately specific to comply with pleading requirements and to establish that he does not have a medical malpractice claim against Dr. Rivera-Cruz as a physician that treated his father. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 85 (1st Cir. 2008). Consequently, Dr. Rivera-Cruz's Motion for Partial Summary Judgment at Docket No. 503 is hereby **DENIED** in its entirety.

Now, the Court's assessment of Plaintiff's Amended Complaint as to Defendant Dr. Rivera-Cruz raises concern as to whether theses causes of action, in the context of a medical malpractice law, are plausible under Commonwealth law. In other words, can a physician, who holds a supervisory role *within* a hospital structure, be held liable for allegedly failing to perform certain duties or institute proper policies, under Articles 1802 and/or 1803 of the Puerto Rico Civil Code?

Moving forward, the Court **ORDERS** the parties to brief, with *specific case-law*, on the following questions: (1) Can a physician be held liable for his supervisory, or directorial, role *within* a hospital structure, exclusively under Article 1802's medical malpractice standard (not Article 1803)?; (2) Can a physician be held liable for his supervisory, or directorial, role *within* a hospital structure, exclusively under Article 1803's medical malpractice standard (not Article 1802)?, and (3) Can these legal standards be applied under factual allegations where a hospital and/or a corporation with a contractual relationship to said hospital are not found liable? In essence, the Court wants the parties to show cause as to whether a physician, not a hospital nor a corporation contracted

41

Civil No. 17-2197 (GAG)

by it, has ever been held liable under what Plaintiff calls "negligence in the performance of supervisory duties" and "director's liability" pursuant Articles 1802 and 1803, separately *and* jointly. Answering these questions will allow the Court to decide whether Dr. Rivera-Cruz can indeed be held liable under Plaintiff's alternative legal theories.[13]

### 2. *Doctors' Hospital*

Plaintiff Calderón-Amézquita's main argument against Defendant Doctors' Hospital is that its admission of liability at the parallel Commonwealth court proceedings is "irrefutable evidence of negligence" and hence, warrants the entry of partial summary judgment. Defendant opposes this contention averring that it only admitted liability as to non-medical personnel and that Plaintiff still has to prove the requirement of adequate causation.

As previously discussed, the First Circuit has held that a judicial admission in one case only serves as *refutable* evidentiary admission in another case. See Raphelson, 802 F.2d at 592. Plaintiff's reliance on Commonwealth court judicial admissions, via Doctors' Hospital answers to the amended complaint, constitute an evidentiary admission that Defendant has contested by qualifying its scope. The alleged judicial admission does not bind this Court into making an automatic negligence determination against Doctors' Hospital. After examining the Commonwealth court document, the Court holds that a reasonable jury may hold that in *itself* the document does not establish negligence

---

[13] Perhaps, this is a legal issue that may ultimately need to be certified to the Puerto Rico Supreme Court. Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012); certified question answered sub nom. SLG Pagan-Renta v. Walgreens, 190 P.R. Dec. 251 (P.R. 2014) ("[I]f the existing case law does not provide sufficient guidance to allow [the court] reasonably to predict how the state's courts would resolve the question, the prudent course is to certify the question to that court better suited to address the issue."); see also Ropes & Gray LLP v. Jalbert (In Re Engage, Inc.), 544 F.3d 50, 53 (1st Cir. 2008); Muñiz-Olivari v. Stiefel Labs., Inc., 496 F.3d 29, 39 (1st Cir. 2007), certified question answered sub nom. Muñiz-Olivari v. Stiefel Labs., 174 P.R. Dec. 813 (P.R. 2008); VanHaaren v. State Farm Mutual Automobile Insurance Co., 989 F.2d 1, 3 (1st Cir. 1993) (citing Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990); González Cabán v. JR Seafood, 285 F. Supp. 3d 502, 503-04 (D.P.R. 2018); Watchtower Bible Tract Soc'y of New York, Inc. v. Municipality of Ponce, 197 F. Supp. 3d 340, 345 (D.P.R. 2016); Collazo-Santiago v. Toyota Motor Corp., 937 F. Supp. 134, 138 (D.P.R. 1996) aff'd149 F.3d 23 (1st Cir. 1998).

1   as to the Plaintiff's father death. See Int'l Shipping Agency, Inc, 2015 WL 5022794 at *9. Thus, this

2   exhibit can only be evaluated in conjunction with other evidence submitted to the record.

3       When assessing whether partial judgment can be granted at this stage, the Court must

4   determine if Doctors' Hospital has signaled out genuine and material issues of fact that precluded it.

5   Plaintiff argues that Defendant improperly opposed facts his motion for partial summary judgment

6   and failed to comply with the local anti-ferret rule. The Court shall first lay out all uncontested facts,

7   including those improperly opposed by Doctors' Hospital, which are relevant and specific to Plaintiff

8   Calderón-Amézquita's motion for partial summary judgment.

9       On January 23, 2016, around 10:00 p.m., Mr. Calderón-Marrero arrived at Doctors' Hospital.

10  (Docket Nos. 509 ¶ 1; 566 ¶ 1) and the nurses classified his abdominal pain as "priority emergent."

11  (Docket Nos. 509 ¶ 6; 566 ¶ 6). Before being admitted as patient, Mr. Calderón-Marrero was not

12  considered to be septic, did not have organ failure nor was dehydrated. (Docket No. 509 ¶¶ 3-4,

13  57).[14] A few hours later, at 12:30 a.m. of the next day, Dr. Ávila-González ordered an abdominal

14  CT Scan to be performed on a STAT basis. (Docket Nos. 509 ¶ 10; 566 ¶ 10). The doctor indicated

15  that the CT Scan was to be performed via drinking "oral contrast" because a CT Scan without

16  contrast was reserved for a possible case of failed kidney or genitourinary. (Docket No. 509 ¶ 18;

17  566 ¶ 18).[15] At this point, Dr. Ávila-González suspected that Mr. Calderón-Marrero could have

18

19

20  [14] Defendant contests these proposed facts arguing that Dr. Álvaro Reymunde's Expert Report contradicts them

21  because Mr. Calderón-Marrero condition was "clearly critical, with a very high morbidity and mortality." (Docket
    No. 515-12 at 2). However, this analysis as to the deceased's condition is circumscribed to "the time of admission
    to the hospital" which does not account for his arrival at the hospital and his time at the Emergency Room. Id.

22  Thus, these proposed facts are deemed uncontested. See L. Cv. R. 56(e) (D.P.R. 2009).

    [15] From Dr. Ávila-González's deposition testimony it arises that the CT Scan ordered was to be done via drinking

23  an oral contrast and he proceeds to explains his reasoning for it. (Docket No. 515-2 at 100-101). Defendant's denial
    as to how Plaintiff proposed this fact is, in reality, a "qualification" as to this matter. The qualification is proper

24  and "strictly related" to the proposed fact; hence, the fact is admitted as qualified. See L. Cv. R. 56(e) (D.P.R.
    2009).

"peritonitis" and a "perforated intestine." (Docket No. 509 ¶ 13; 566 ¶ 13).[16] During this period at the Emergency Room, Plaintiff's father is accompanied by his other son Omar Calderón-Amézquita. (Docket No. 509-6). Omar Calderón-Amézquita later declared that: (1) his father had difficulty drinking the pint of "contrast;" (2) he sought for help from medical personnel, yet nobody came to re-examine him, and (3) he witnessed his father's health deteriorate. (Docket No. 509 ¶¶ 27-31; 566 ¶¶ 27-31).[17] Notwithstanding, when Dr. Ávila-González finished his shift at 7:00 a.m. on January 24, 2016, the CT Scan had not been performed nor did Dr. Ávila-González asked for or re-evaluated Mr. Calderón-Marrero to rule-out the possibility of a perforated intestine/ulcer. (Docket Nos. 509 ¶¶ 34, 37, 38; 566 ¶¶ 34, 37, 38). During his deposition, Dr. Ávila-González was asked whether these actions were "compliant with the applicable standard of care?" and he answered, "In retrospect, no." (Docket No. 509 ¶ 34; 566 ¶ 34).[18]

The CT Scan was performed at 4:04 p.m., approximately sixteen hours since it was originally ordered. (Docket No. 509 ¶ 34; 566 ¶ 34). Within minutes, the test revealed that Mr. Calderón-Marrero had a perforated intestine. (Docket No. 509 ¶ 49; 566 ¶ 49). The radiologist informed the results to Dr. Torres-Sánchez, who then ordered the nurse to give the decedent antibiotics and perform certain laboratories tests. (Docket No. 509 ¶ 52; 566 ¶ 52). After 5:00 p.m., a surgeon examined Mr. Calderón-Marrero and noticed that he was "very dehydrated" and seemed to have

---

[16] Defendant's denial that Dr. Ávila-González was evaluating these conditions as "differential diagnosis" does not properly deny or qualify Plaintiff's proposed fact. This proposed fact is deemed uncontested. See L. Cv. R. 56(e) (D.P.R. 2009).

[17] Defendant's denial of Omar Calderón-Amézquita's unsworn declaration under penalty of perjury does not abide by Local Rule 56(e) because it is not supported by any material on record and simply qualifies what the "affidavit" affirms. The Court has reviewed the unsworn declaration and the proposed fact is supported by it; thus, these facts are admitted as qualified. See L. Cv. R. 56(e) (D.P.R. 2009).

[18] Defendant's denial is a "qualification." The Court cites *ad verbatim* the deposition transcript. (Docket No. 515-2 at 91). The qualification is proper and "strictly related" to the proposed fact; hence, the fact is admitted as qualified. See L. Cv. R. 56(e) (D.P.R. 2009).

developed "renal failure or insufficiency." (Docket Nos. 509 ¶¶ 53-55; 566 ¶¶ 53-55).[19] Given that Mr. Calderón-Marrero was dehydrated, the surgeon indicated that he was not a candidate for surgery until after he was hydrated and had taken antibiotics. (Docket No. 509 ¶ 56; 566 ¶ 56).[20] Mr. Calderón-Marrero was admitted to internal medicine after the surgeon's consult on January 24, 2016 at 5:30 p.m., went into surgery on January 25, 2016 at 7:45 a.m. (Docket No. 509 ¶ 58; 566 ¶ 58) and after spending a few weeks in the ICU died on February 21, 2016. (Docket No. 509 ¶ 62; 566 ¶ 62).

The following facts were contested by Defendant Doctors' Hospital through opposition or a counter-statement of facts: First, Plaintiff Calderón-Amézquita states that the medical standard of care for a patient that may have peritonitis is to order him or her to take antibiotics and that the standard of care for ruling out a perforated intestine is to consult a surgeon. (Docket No. 509 ¶¶ 14-16). Similarly, Plaintiff Calderón-Amézquita holds that it is "not medically indicated" for a patient with a possible perforated intestine to wait more than two hours for an "oral contrast" to be taken. Id. ¶ 20. To support this fact, Plaintiff relies on Dr. Ávila-González Deposition Testimony (Docket No. 515-2). Defendant opposes this fact also relying on Dr. Ávila-González Deposition Testimony (Docket No. 515-2) and citing Dr. Rivera-Cruz's Deposition Testimony (Docket No. 515-3). Doctors' Hospital includes a fact, in its separate counterstatement, indicating that peritonitis is not treated with antibiotics, but rather with surgery and that without a proper diagnosis as to what is causing the abdominal pain, a physician cannot call for a surgical consult. (Docket No. 566 Counterstatement ¶¶ 18, 20).

---

[19] Defendant's denial is a "qualification." The Court references the deposition transcript. (Docket No. 515-9 at 50). The qualification is proper and "strictly related" to the proposed fact; hence, the fact is admitted as qualified. See L. Cv. R. 56(e) (D.P.R. 2009).

[20] Defendant's denial is a "qualification." The Court references the deposition transcript. (Docket No. 515-9 at 52). The qualification is proper and "strictly related" to the proposed fact; hence, the fact is admitted as qualified. See L. Cv. R. 56(e) (D.P.R. 2009).

Civil No. 17-2197 (GAG)

Second, and in connection to the previous fact, Plaintiff Calderón-Amézquita puts forward that fifteen and a half hours had elapsed since the STAT CT Scan was ordered and the results were available and he holds that this timespan constitutes a breach of the applicable standard of medical care. (Docket No. 509 ¶ 47). To support this fact, Plaintiff relies on Dr. Ávila-González Deposition Testimony (Docket No. 515-2). Defendant opposes this fact relying on Dr. Rivera-Cruz's Deposition Testimony (Docket No. 515-3). Doctors' Hospital includes several facts, in its separate counter-statement, declaring that: (1) the standard of care for emergency rooms are guidelines that do not necessarily obligate physicians because it depends on each particular case; (2) the applicable standard of care does not establish a time limit to obtain CT Scan results and (3) a delay in making a diagnosis does not imply a particular outcome because this varies from case to case. (Docket No. 566 Counterstatement ¶¶ 10-11, 17). Specifically, as to Mr. Calderón-Marrero's case, Dr. Rivera-Cruz testified that (1) his condition, before being admitted to internal medicine, could have led to a different diagnosis other than peritonitis and (2) that peritonitis itself was enough to increase death risks, with or without a delay in treatment. (Docket No. 566 Counterstatement ¶¶ 21-22).

Third, Plaintiff Calderón-Amézquita signals out that ancillary and non-medical personnel, e.g. nurses, working at Doctors' Hospital Radiology Department and Emergency Room, have a duty to perform CT Scans when ordered, to notify doctors of any delay in this process, monitor patient's health condition, and inform doctors of any problem or concern as to the patient. (Docket No. 509 ¶¶ 21-26, 51). Plaintiff explicitly holds that nurses have an obligation to notify if a patient has difficulties drinking a "contrast" ordered for a CT Scan. Id. ¶ 25. To support this fact, Plaintiff relies on Dr. Ávila-González Deposition Testimony (Docket No. 515-2) and Doctors' Hospital Rules for Receipt of Oral Contrast for IPD/ER (Docket No. 515-5). Once again, Defendant opposes this fact relying on Dr. Rivera-Cruz's Deposition Testimony (Docket No. 515-3) and qualifying the Rules for Receipt of Oral Contrast at Docket No. 515-5. Doctors' Hospital includes a fact, in its separate

1    counterstatement, affirming that there is no hospital procedure that details what the nurses'

2    responsibilities ER physicians' responsibilities are in connection with the intake of oral contrast and

3    that the Rules for Receipt of Oral Contrast only explain how the process must occur. (Docket No.

4    566 Counterstatement ¶¶ 14-15).

5         Fourth, Plaintiff Calderón-Amézquita proffers that Dr. Rivera-Cruz expressly admitted to

6    him, on January 25, 2016 that the physicians working at the Emergency Room failed to provide

7    proper medical care to his father. (Docket No. 509 ¶¶ 59-60). To support this fact, Plaintiff relies on

8    testimony from his own deposition (Docket No. 515-11) and Dr. Rivera-Cruz's Deposition

9    Testimony (Docket No. 515-3). Defendant opposes this fact relying on Dr. Rivera-Cruz's Deposition

10    Testimony (Docket No. 515-3), who stated that he did not remember the specifics of the conversation

11    he had with Plaintiff on that date.

12         After reviewing the contested and uncontested facts presented by the parties, the Court holds

13    that are genuine issues of material facts that preclude summary judgment considering that these

14    would require the undersigned to make impermissible credibility determinations and weighing the

15    evidence. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

16         Plaintiff opposes Defendant's counterstatement of fact arguing that Dr. Rivera-Cruz's

17    deposition transcript constitutes expert testimony governed by FED. R. CIV. P. (26)(a)(2). The Court

18    disagrees. Rule 26 imposes requirements for any "witness who is retained or specifically employed

19    to provide expert testimony in the case" by way of an expert report. FED. R. CIV. P. P. 26(a)(2)(B).

20    This requirement applies to a person testifying "under Rule 702 of the Federal Rules of Evidence

21    with respect to scientific technical, and other specialized matters." FED. R. CIV. P. 26(a)(2).

22    However, "[t]hat definition does not encompass a percipient [or fact] witness who happens to be an

23    expert." Gómez v. Rivera Rodríguez, 344 F.3d 103, 113 (1st Cir. 2003). See also Torres-Rivera v.

24    Centro Medico Del Turabo Inc., 215 F. Supp. 3d 202, 205-06 (D.P.R. 2016); 8A Charles Alan

Civil No. 17-2197 (GAG)

Wright & Arthur R. Miller, Expert Witnesses-1993 Requirement for Detailed Report and Routine Depositions Regarding Retained Expert Witnesses, Federal Practice and Procedure § 2031.1 (3d ed. 2008).

Dr. Rivera-Cruz gave deposition testimony as director and supervisor of Doctors' Hospital Emergency Room and as president of GEVRC and, in these capacities, he provided percipient and personal testimony, acquired before the litigation, as to: (1) his supervisees roles and performance generally and specifically related to this case and (2) commented about the policies and procedures that govern the Emergency Room. This testimony can be considered at the summary judgment stage. See Díaz-Casillas v. Doctors' Ctr. Hosp. San Juan, 342 F. Supp. 3d 218, 228–29 (D.P.R. 2018); Downey v. Bob's Disc. Furniture Holdings, 633 F.3d 1, 5 (1st Cir. 2011). Moreover, as Defendant correctly points out in its sur-reply, Plaintiff Calderón-Amézquita elicited this testimony and has used it throughout this litigation to support his factual and legal allegations. (Docket No. 575 at 9-11). Now Plaintiff cannot move the Court to disregard said testimony.

Accordingly, there indeed exist issues of material fact as to: (1) the required standard of care for peritonitis and a perforated intestine, including any time-limit requirements to perform a CT Scan and rule-out these diagnoses and (2) whether nurses, other ancillary and non-medical staff had an obligation under Doctors' Hospital policies and bylaws, irrespective of what Defendant may have admitted at Commonwealth court, to perform a CT Scan when ordered, to notify doctors of any delay in this process, monitor patient's health condition, and inform doctors of any problem or concern as to the patient. Adjudicating these matters would require "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" all of which "are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**Civil No. 17-2197 (GAG)**

Consequently, these genuine and material issues of fact preclude the entry of summary judgment in Plaintiff's favor. For the foregoing reasons, the motion for partial summary judgment at Docket No. 509 is hereby **DENIED**.

**IV.    Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants Dr. Andrés Ávila-González and Dr. Ángel Torres-Sánchez's Motions to Dismiss at Docket Nos. 502 and 505, **GRANTS** Defendants Grupo de Emergencias VRC, CSP ("GEVRC") and Dr. Carlos Hernández-Román's Motions for Partial Summary Judgment at Docket Nos. 506 and 511, **DENIES** Defendants Dr. Victor Rivera-Cruz's Motion for Partial Summary Judgment at Docket No. 503 and **DENIES** Plaintiff Calderón-Amézquita's Motion for Partial Summary Judgment against Defendant Doctors' Hospital at Docket No. 509.

**SO ORDERED.**

In San Juan, Puerto Rico this 22nd of July, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge